**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**July 2, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

_____

DIAMOND G RODEOS, INC., a Utah
corporation; STEVE GILBERT, an
individual; CYNDI GILBERT, an
individual,

     Plaintiffs - Appellees,

v.

BRIAN JAMES GIFFORD, an individual,

     Defendant - Appellant,

and

DOES 1-10,

     Defendants.

No. 25-4097
(D.C. No. 4:22-CV-00089-DN-PK)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **BACHARACH**, and **EID**, Circuit Judges.
_____

Plaintiffs Diamond G Rodeos and Steve and Cyndi Gilbert brought this

diversity action against Brian Gifford for conversion of fourteen branded ranch

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

horses and defamation.  The district court entered default judgment against Gifford as a terminating sanction after he failed to comply with discovery orders.  Proceeding *pro se*, Gifford appeals on five grounds, none of which has merit.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

I

Diamond G Rodeos and Steve and Cyndi Gilbert alleged that Gifford, their former ranch manager, came into possession of branded ranch horses they owned, refused to return them, and then publicly accused the Gilberts of theft.  They sued for conversion and defamation.  Gifford answered, counterclaimed, and—after his counsel withdrew—proceeded *pro se*.

Discovery proved contentious.  Gifford repeatedly failed to respond to Plaintiffs' requests despite the magistrate judge's orders to do so.  The magistrate judge granted Plaintiffs' motion to compel responses to their interrogatories and document requests, awarded fees, and warned that continued noncompliance "may result in sanctions, up to and including default judgment."  Suppl. R. vol. III at 104.  District Judge Nuffer issued two similar warnings in separate orders.  *See* R. vol. I at 6–7 (Dkt. Nos. 55–56).  Rather than comply, Gifford filed documents denying Plaintiffs' accusations, offering his own version of events, and accusing the court of misconduct.  But he did not produce the ordered discovery.

Plaintiffs moved for sanctions.  The magistrate judge scheduled a hearing, which Gifford did not attend, and issued a report and recommendation applying the five *Ehrenhaus* factors and recommending a default judgment.  *See Ehrenhaus v.*

2

*Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992).  Gifford did not object, and the district court adopted the recommendation, entering default against Gifford and dismissing his counterclaims.

Gifford's filings continued.  He sought a default judgment in his own favor, filed motions declaring the court's orders void, and moved to recuse both judges. The district court denied all relief requested in these filings.  The court also imposed filing restrictions requiring Gifford to obtain leave before filing *pro se*, and, after Gifford repeatedly refused to comply with those restrictions, held him in civil contempt.  Plaintiffs moved for entry of judgment, and the district court assessed damages on the basis of Ms. Gilbert's sworn declaration, which documented Plaintiffs' ownership and valued each horse.  The court entered judgment for $196,054.70.  Gifford filed this timely appeal, raising five issues.

II

Gifford first contends that Plaintiffs lack Article III standing because "ownership—the factual basis of standing—was unresolved," so the contempt sanctions, the fee awards, and the judgment against him must therefore be vacated. Aplt. Op. Br. at 3.[1]  We disagree.  We review questions of Article III standing *de novo*.  *Does 1–11 v. Bd. of Regents of Univ. of Colo.*, 100 F.4th 1251, 1261 (10th Cir. 2024).  To sue in federal court, a plaintiff must demonstrate (1) an injury in fact, (2) fairly traceable to the defendant's conduct, and (3) redressable by a favorable

---

[1] Gifford's opening brief contains two consecutive pages designated as "Page 3."  To avoid confusion, we cite to the page numbers in the CM/ECF header.

3

decision. *Id.* at 1262. Gifford challenges only the first element—that absent proof of ownership, Plaintiffs suffered no injury in fact.

Gifford does not argue that Plaintiffs failed to allege ownership—they plainly did, identifying each horse by brand number, name, and type in the complaint. R. vol. I at 20–21. His quarrel is instead with the fact of ownership: whether Diamond G proved what it alleged. But that challenge goes to the merits of the conversion claim, not to Article III jurisdiction. *See Knellinger v. Young*, 134 F.4th 1034, 1038 (10th Cir. 2025) (holding that where the standing analysis overlaps with the merits, a plaintiff who has "stated a plausible claim" to the taking of its property has "adequately pleaded an injury sufficient to confer standing"). The purpose of the standing inquiry "is not to determine whether a party has *proven* its case but to gauge whether it should be granted access to the federal courts." *Jackson v. Volvo Trucks N. Am., Inc.*, 462 F.3d 1234, 1241 (10th Cir. 2006). Were it otherwise, "every losing claim would be dismissed for want of standing." *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1092 (10th Cir. 2006) (en banc). For that reason, standing is "rarely implicated in private civil disputes" of this kind, and it is not implicated here. *Jackson*, 462 F.3d at 1242. A plaintiff who alleges the defendant took and withheld its property has alleged a concrete and particularized injury—and that is all standing demands. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) ("[C]ertain harms readily qualify as concrete injuries under Article III. The most obvious are traditional tangible harms, such as . . . monetary harms.").

4

III

Gifford next contends that the district court violated his due process rights by blocking the clerk from entering a default judgment in his favor under Rule 55(b)(1). We review the denial of a motion for default judgment for abuse of discretion. *Bixler v. Foster*, 596 F.3d 751, 761 (10th Cir. 2010). Rule 55 makes entry of a default, and any judgment that follows from it, available only where a party "has failed to plead or otherwise defend" the affirmative claims against it. Fed. R. Civ. P. 55(a). Gifford moved for a default judgment based on the care and feeding of several horses he says Plaintiffs abandoned. The district court denied the motion, holding that, by the time Gifford filed it, "there [were] no live claims in this matter for which Gifford could even potentially seek default judgment." R. vol. I at 436. That was correct. By the time Gifford sought default, the district court had adopted the magistrate judge's report and recommendation, entered default against Gifford, and dismissed his counterclaims; nothing of his remained on which a default could be sought. And Plaintiffs, far from having failed to defend, had "vigorously participated" and obtained the default judgment against him. *Id.*

On appeal, Gifford resists the district court's conclusion, insisting that "the clerk must enter default and default judgment for a sum certain once the prerequisites are met." Aplt. Op. Br. at 3 (emphasis omitted). But he fails to identify any claim that would entitle him to such relief.[2] *See Nixon v. City & Cnty. of Denver*, 784 F.3d

---

[2] Nor do we discern any such claim ever pleaded by Gifford. Gifford's theory of default, the care costs for the horses Plaintiffs allegedly abandoned, did not

1364, 1366 (10th Cir. 2015) ("The first task of an appellant is to explain to us why the district court's decision was wrong."). We accordingly discern no abuse of discretion.[3]

## IV

Gifford next contends that Diamond G procured the judgment through fraud on the court. He raised a similar argument as part of a series of post-judgment filings the district court found "baseless, incoherent, and irrelevant." R. vol. I at 471. We review that ruling for abuse of discretion. *Servants of Paraclete v. Does*, 204 F.3d 1005, 1009 (10th Cir. 2000). We discern none.

Fraud on the court is fraud "directed to the judicial machinery itself" that corrupts the court's impartial functioning. *Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir. 1985) (en banc). Gifford does not engage with the district court's order granting judgment—the order he alleges was procured by fraud—or otherwise explain how his allegations meet the fraud-on-the-court standard. *See Nixon*, 784 F.3d at 1366. Instead, he rests his charge on two premises, and both fail. First,

---

correspond to either of his pleaded counterclaims, which alleged conversion of a different horse and breach of an employment and ownership agreement. *See* R. vol. I at 54–56.

[3] In his discussion on this issue, Gifford also asserts that the district court abused its discretion by failing to consider the five factors required for case-terminating sanctions. *See Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992). It is not clear how that contention bears on the clerk's entry of default, and in any event, it fails on the face of the record. The magistrate judge's report and recommendation worked through all five *Ehrenhaus* factors before recommending terminating sanctions, R. vol. I at 138–42, and Gifford filed no objection, waiving the point under our firm-waiver rule, *see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119 (10th Cir. 2005).

he claims that opposing counsel conceded "no proof of acquisition existed." Aplt. Op. Br. at 4 (emphasis removed). But the page he cites does not contain that concession; it is Plaintiffs' supplemental memorandum arguing for constructive amendment of the complaint to include damages for a fourteenth horse. *See* Suppl. R. vol. III at 146. Second, he claims that counsel "advanced inflated valuations supported by an unrelated 2013 check," which the court adopted as findings of fact. Aplt. Op. Br. at 4. But he never shows how the 2013 check bears on the valuations the court adopted, or that the district court relied on it at all. *See Nixon*, 784 F.3d at 1366. Rather, the district court's order granting default judgment appears to rest on Ms. Gilbert's sworn declaration, which valued each horse and documented Plaintiffs' ownership with photographs, acquisition ledgers, and registration records—not the 2013 check. R. vol. I at 568. A conclusory charge of fraud, unsupported by the record he cites, does not establish that the district court abused its discretion—and it is not our task to sift the record for support he has not supplied. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

V

Gifford next contends that "structural bias" by the magistrate judge and district court "requires vacatur of all orders." Aplt. Op. Br. at 4. We review the denial of a motion to recuse for abuse of discretion. *Maez v. Mountain States Tel. & Tel., Inc.*, 54 F.3d 1488, 1508 (10th Cir. 1995). Under § 455(a), a judge must disqualify himself where his impartiality "might reasonably be questioned." 28 U.S.C. § 455(a). In support of his argument, Gifford points to Ms. Gilbert's service on the

magistrate judge selection panel "and the district judge's reliance on that party's representations without evidentiary support." Aplt. Op. Br. at 4.

The magistrate judge denied recusal as to himself because Gifford had "pointed to nothing to suggest that the undersigned's impartiality might reasonably be questioned." Suppl. R. vol. III at 7. We agree. Although Ms. Gilbert served on a merit-selection panel that evaluated applicants for the position the magistrate judge was selected to fill, the district judges—not the panel or Ms. Gilbert—made the appointment. And because the panel's deliberations are confidential, "Ms. Gilbert's opinions about [the magistrate judge] remain unknown." *Id.* at 6. At most, Gifford shows that the judge "has interacted with Ms. Gilbert at points in the past." *Id.* at 7. But that does not suffice to show the sort of partiality required for recusal. *See Maez*, 54 F.3d at 1508 (declining to require recusal where the judge had represented the defendant decades earlier and may have socialized with its employees); *Singer v. Wadman*, 745 F.2d 606, 608 (10th Cir. 1984) (former law partnership with a party's counsel did not compel disqualification).[4]

Gifford's challenge to the impartiality of the district court judge is similarly unavailing. He contends that the court's reliance on Ms. Gilbert's representations,

---

[4] Gifford's authorities are not to the contrary. In *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 850 (1988), the judge sat as a trustee of a university with a financial stake in the litigation's outcome. And in *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 872–73 (2009), a litigant spent some $3.0 million to elect the justice who would hear his appeal. Neither resembles a lawyer's confidential service on a merit-selection panel or a judge's ordinary professional acquaintance with members of the local bar.

"without evidentiary support," creates an appearance of bias. Aplt. Op. Br. at 4. But the challenged valuations rested on her sworn declaration and other evidence. *See* R. vol. I at 568. Gifford's objection reduces to dissatisfaction with adverse rulings, which does not establish bias. *See Liteky v. United States*, 510 U.S. 540, 555 (1994) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion."). We accordingly discern no abuse of discretion.

VI

Finally, Gifford asserts the district court's "refusal to docket multiple filings" and its withholding of a transcript violated 28 U.S.C. § 753(b) and prevented him from "present[ing] or preserv[ing] his claims fully." Aplt. Op. Br. at 5. We disagree. After a pattern of noncompliant filings, the district court imposed filing restrictions requiring Gifford to obtain leave before filing *pro se* and to follow a prescribed procedure to order a transcript. *See* R. vol. I at 472. Restrictions of that kind do not deny access to the courts. *See Tripati v. Beaman*, 878 F.2d 351, 353–54 (10th Cir. 1989) (filing restrictions do not violate the right of access where they afford a procedure for obtaining leave to file). The undocketed filings and the transcript Gifford initially failed to obtain were the product of his own refusal to follow that procedure. *See* R. vol. I at 16 (Dkt. No. 145), 17 (Dkt. No. 157); Suppl. R. vol. III at 163–64. Once he complied, the court granted his motion for leave and the transcript at issue was produced. *See* Suppl. R. vol. II at 107. Section 753(b) did not entitle

Gifford to bypass those requirements. His contrary assertions are conclusory and do not establish a violation of his due process rights. *See Garrett*, 425 F.3d at 840.

VII

For the foregoing reasons, we AFFIRM. We DENY Gifford's motion to supplement the record with transcripts of district court proceedings that postdate his notice of appeal (Dkt. No. 47). We also decline to consider Plaintiffs' request for appellate attorney's fees made in their response brief, Resp. Br. at 16–18, rather than by separate motion as required by Federal Rule of Appellate Procedure 38.[5]

Entered for the Court

Allison H. Eid
Circuit Judge

---

[5] Rule 38 authorizes an award only "after a separately filed motion or notice from the court." Fed. R. App. P. 38. The Advisory Committee has explained that "[a] statement inserted in a party's brief … is not sufficient notice." Fed. R. App. P. 38 advisory committee's note to 1994 amendment. And we decline to issue any such notice ourselves.